**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DENISE GARCIA,** | § | **CIVIL ACTION NO.:4:16-cv-2134** |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **V.** | § | |
| | § | |
| **HARRIS COUNTY, TEXAS,** | § | **2nd AMENDED COMPLAINT** |
| **CITY OF HOUSTON, TEXAS,** | § | **(JURY TRIAL)** |
| **RICHARD LEAL III, *Individually,*** | § | |
| **TIMOTHY HUERTA, *Individually,*** | § | |
| **BRITTANY ANN JONES, *Individually,*** | § | |
| **and OFFICER M.S,, *Individually,*** | § | |
| | § | |
| ***Defendants.*** | § | |

**PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, DENISE GARCIA, hereinafter referred to as "Plaintiff" or simply "Ms. Garcia," pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C Section 2000e *et seq*., ("Title VII"), and 42 U.S.C. Section 1983 and 1988 complaining of and about HARRIS COUNTY, CITY OF HOUSTON, and RICHARD LEAL III, TIMOTHY HUERTA, BRITTANY ANN JONES and OFFICER M.S., all in their individual capacity, hereinafter sometimes called the "Defendants", and for cause of action shows unto the Court and the Jury the following:

## I.
## PARTIES AND SERVICE

1. Plaintiff, Denise Garcia, is a citizen of the United States and the State of Texas and resides in Harris County, Texas.

2. Defendant, Harris County (the County), is a political subdivision of the State of Texas. Service of citation upon the Harris County shall be made on the County Judge at 1001 Preston, Houston, TX 77002.

3. Defendant, City of Houston (The City), is a governmental entity existing under the laws of the State of Texas. Service of citation upon the City of Houston shall be made on the City Secretary at 901 Bagby, Houston, TX 77002.

4. Defendant, Richard Leal III (Officer Leal), is an individual and is being sued in his individual capacity. Service of citation upon Richard Leal III shall be at 61 Reisner, Houston, TX 77002 or wherever he is found.

5. Defendant, Timothy Huerta (Officer Huerta), is an individual and is being sued in his individual capacity. Service of citation upon Timothy Huerta shall be at 61 Reisner, Houston, TX 77002 or wherever he is found.

6. Defendant, Brittany Ann Jones (Officer Jones), is an individual and is being sued in her individual capacity. Service of citation upon Brittany Ann Jones shall be at 61 Reisner, Houston, TX 77002 or wherever she is found.

7. Defendant, Officer M.S., is an individual and is being sued in his individual capacity. Service of citation upon Officer M.S. by agreement shall be upon Connica Lemond at 901 Bagby, Houston, TX 77002 or wherever she is found. The Court has ordered that "Officer M.S." is the appropriate indicator of this defendant.

## II.
## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. § 1331 because Plaintiff has alleged a violation of a federal statue, 42 U.S.C. § 2000e *et*

*seq*. and 42 U.S.C. Sections 1983 and 1988. Venue in appropriate in this Court pursuant to 28 U.S.C. § 1391(b).

## III.
## CONDITIONS PRECEDENT

9. All conditions precedent to jurisdiction have occurred or been complied with: Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's receipt of a right to sue letter on or about April 23, 2016.

## IV.
## STATEMENT OF FACTS

10. On December 19, 2014, Ms. Denise Garcia was terminated by the Harris County District Attorney's Office (thereafter referred to as "HCDAO") because of her race or national origin. Ms. Garcia is a Hispanic female.

11. On Friday, November 14, 2014, Ms. Garcia was driving her son to the doctor's office after he tested positive for respiratory issues. Ms. Garcia met with her son's father, Salvador Rodriguez, at a relative's residence neat Washington Avenue in Houston, Texas and proceeded to drive to the doctor's office. Ms. Garcia was in a relationship with Mr. Rodriguez.

12. At some time during or after Ms. Garcia's stop at the residence Officer M.S., a Houston police officer working undercover, instructed Officer Leal and Officer Huerta, Houston police officers, to initiate a traffic stop of Ms. Garcia. While driving on T.C. Jester in route to the doctor's office, a patrol car operated by Officer Leal with Officer Huerta as a passenger pulled over the car operated by Ms. Garcia. Ms. Garcia was driving legally and committed no traffic violations. Ms. Garcia pulled over. Officer M.S. followed Ms. Garcia and observed the traffic stop

and subsequent events. Thereafter, Officer Leal and Officer Huerta approached Ms. Garcia's vehicle.

13. At some point Officers Huerta and Officer Leal began asking passenger Mr. Rodriguez questions unrelated to the traffic stop so Ms. Garcia informed Mr. Rodriguez of his Constitutional right not to speak. Immediately after speaking Officer Leal threatened Ms. Garcia with arrest in earshot of Officer Huerta. Thereafter, Ms. Garcia was frightened to speak to Mr. Rodriguez despite wanting to speak to him.

14. Ms. Garcia immediately produced her driver's license and gave the officers her insurance information which were all in order. Officer Leal and Officer Huerta requested to search Ms. Garcia's car. Ms. Garcia refused the search and the officers repeated their requests with Ms. Garcia always refusing. Officer Leal and Officer Huerta ordered Ms. Garcia to exit her vehicle and then the officers proceeded to search the car, including the trunk of her car for at least 45 minutes. Officer Jones, a female Houston police officer, arrived and searched Ms. Garcia's bra and pants without Ms. Garcia's permission. Although the search did not uncover any illegal activity, Ms. Garcia was handcuffed by Officer Huerta in full view of the other officers. Officer Huerta seized Ms. Garcia's wallet without her permission and discovered her badge indicating employment with the Harris County District Attorney's Office. Officer Huerta then proceeded to seize Ms. Garcia's cell phone without permission and erased a section of her phone recordings of the events without her permission. Ms. Garcia complained to all the officers present that her rights were being violated yet no officer intervened.

15. Eventually, after over an hour Ms. Garcia was released by the HPD officers. Ms. Garcia was not arrested, was not cited for any traffic violations, or charged with any other violations of the law. Mr. Rodriguez was arrested for an open warrant relating to a traffic ticket,

but was not arrested for any other reason. At no time was there reasonable suspicion or probable cause that Ms. Garcia committed any crime or was a danger to anyone. Ms, Garcia acted lawfully at all times.

16. On November 17, 2014, Ms. Garcia filed a complaint with the HPD Internal Affairs Division, hereinafter referred to as "IAD." Ms. Garcia complained of the traffic stop and what she believed were violations of her right to be free from illegal searches and seizures. Ms. Garcia also believed that she was being racially profiled by HPD due to her Hispanic race or national origin.

17. The City of Houston has a pattern and practice of illegal searches and seizures and detaining, and arresting people for speaking, failing to discipline and to supervise. The Officers involved lacked the training or had incorrect training by the City of Houston.

18. After Ms. Garcia filed the IAD complaint at least Officer M.S. phoned the Harris County District Attorney's Office and spoke with at least Assistant District Attorney (ADA) Terese Buess.

19. Shortly thereafter, Ms. Garcia was interviewed by Terese Buess and Tiffany Johnson, both ADAs. Both Ms. Buess and Ms. Johnson worked for the HCDAO. During the interview, Ms. Buess and Ms. Johnson inquired as to the events occurring on November 14, 2014 as detailed in the preceding paragraphs. Ms. Garcia was initially surprised as to the nature of the inquiry, as the traffic stop did not have any connection to her employment with the HCDAO. Nevertheless, Ms. Buess and Ms. Johnson proceeded to ask questions to Ms. Garcia about the traffic stop. Ms. Garcia answered the questions truthfully and to the best of her ability. At no time did anyone at the Harris County District Attorney's inform Ms. Garcia of the nature of any complaint against Ms. Garcia or indicate any policy violation.

20. On November 20, 2014, Ms. Garcia was placed on administrative leave with pay pending the results of the investigation. On December 19, 2014, ADA Belinda Hill, the First Assistant to the District Attorney, Devon Anderson, terminated Ms. Garcia. Ms. Garcia was not provided any advance notice as to the nature of the investigation and the reasons why she was terminated. Even after the meeting with ADA Belinda Hill, Ms. Garcia was not provided clear reasons why she was terminated as the traffic stop had no connection to her employment at the HCDAO. District Attorney Devon was informed of the decision to fire Ms. Garcia prior to the firing. Ms. Garcia was given no right to have any appeal, hearing or other proceeding to challenge the unknown accusations.

21. Later, Ms. Garcia received a copy of her employment file through an open records request. In that employment file, Ms. Garcia discovered a memo dated December 12, 2014 which appeared to provide the reasons given to Devon Anderson to terminate her.. The memo indicates that Ms. Garcia was being dishonest regarding the events occurring the traffic stop on November 14, 2014. The memo also indicated that Ms. Garcia was being dishonest when she was not aware of the criminal history of Mr. Rodriguez. In response, Ms. Garcia denies that she was dishonest and was not aware, at the time, that Mr. Rodriguez had a criminal history. Ms. Garcia argues that the HCDAO's reasons for her termination was pre-textual and that she was fired because she is Hispanic.

22. Ms. Garcia due to the above described events has suffered at least anxiety, fear, depression, remorse, shame, loss of sleep and loss of enjoyment of life.

23. Donald Boyd, 34, a severely disabled individual, Charles Pribilski, 40, and Josh Johnson, 20, were at the Pink Monkey, an open, legal "after hours" club, licensed by the City of Houston, in the downtown area, on May 17, 2008, around 3:00 am when they were detained for

over 30 minutes by Houston police officers, handcuffed and searched without probable cause or reasonable suspicion. They were acting in a totally legal manner and were not a danger to themselves or anyone.

24. The night of August 5, 2009, Dr. Hatice Cullingford was alone at her home. That night a wanted criminal from Dallas, Texas, Robert Shlemon, 26, was walking his dog with another person by Dr. Cullingford's residence. Shlemon had previously been convicted of a drug crime, *carrying a weapon in a prohibited place,* as well as other crimes. At the time he was wanted on several warrants from Dallas County, Texas.

25. In full view of Dr. Cullingford Wanted Criminal Shlemon and the other individual then proceeded to allow their dog to defecate on Dr. Cullingford's well-manicured lawn--in the flower bed--thereby violating Houston City ordinance. Dr. Cullingford told Wanted Criminal Shlemon and the other person not to do this. Wanted Criminal Shlemon and the other individual then proceeded to berate Dr. Cullingford and the dog lunged forward at Dr. Cullingford. Wanted Criminal Shlemon then stated *he was going to get his gun* and they left.

26. Later that evening Defendant Houston police officers T. E. Seals, F. Rodriguez and H. J. Morales Jr., arrived at Dr. Cullingford's residence. The 3 HPD Officer's police came to Dr. Cullingford's front door and arrested Dr. Cullingford. Dr. Cullingford was put in handcuffs and placed in the back of a City of Houston police car and her belongings and houses searched. There was no reasonable or suspicion or probable cause that Dr. Cullingford had committed any crime and was a danger to no one.

27. The 3 HPD Officers then entered and re-entered Dr. Cullingford's residence and searched Dr. Cullingford's residence for over an hour--all without permission. The officers took Dr. Cullingford's purse from her residence and at least H. J. Morales and possibly the other two

officers searched through Dr. Cullingford's purse and took out and searched various items without permission. Dr. Cullingford found the experience very embarrassing and frightening. Dr. Cullingford was threatened with a Taser.

Michael Haven is 48 years old, married, has a son, and has never been convicted of a crime in his life.1 Mike has owned MPH Automotive, a vehicle repair service in Houston, Texas, since 1983. Mike started MPH Cycles, servicing motorcycles, at the same location in 2000.

28. November 7, 2007, a customer appeared at MPH Cycles to pick up a BMW motorcycle that had been repaired. The customer omer had previously entered MPH's shop work area to photograph his motorcycle under repair. The customer previously had smoked a cigar in an MPH area where smoking was not allowed and had refused to stop smoking when asked by Mike.

29. The customer stayed in the parking lot until a Houston Police Department (HPD) squad car arrived with HPD officer Glen Dickerson driving. The customer spoke to Officer Dickerson and then went inside MPH and presented personal money orders for $2951.05 for payment of the repairs on the BMW motorcycle.2

30. Concerned about the threatened lawsuit Mike went outside of his business into his parking lot and took pictures of the condition of the BMW motorcycle and also took a photograph of the clearly marked HPD police squad car in public that was on MPH's property. Officer Dickerson rolled down the window and commanded that Mike not take a picture of the clearly marked HPD squad car in public on Mike's property.

31. HPD officer Dickerson then immediately exited the HPD squad car in an aggressive manner and commanded Mike to produce an identification card. Mike indicated his ID was not on him but in his business building and Mike then entered his business building to get his

identification card. Mike did not want to show the officer his identification but Officer Dickerson said it was the law of Texas that when a peace officer request an identification the individual must show an identification. There is no Texas law that you must produce an ID. Mike asked Officer Dickerson to wait outside, however, Officer Dickerson entered Mike's business building behind Mike. Mike verbally disagreed with Officer Dickerson's demands regarding an essentially civil business matter on Mike's business property.

32. At the door to Mike's office Mike asked the Officer Dickerson to wait outside the office. Officer Dickerson followed Mike into his office and stood next to Mike at an uncomfortably close distance. Mike then retrieved his Texas driver's license from a billfold on his office desk and gave it to Officer Dickerson.

33. Mike then picked up the telephone on his desk to place a call. A few seconds after giving Officer Dickerson his valid Texas driver's license Officer Dickerson grabbed Mike's arm and cuffed it stating that Mike was being arrested. Officer Dickerson then pushed Mike across the desk and placed the cuff on my left hand after twisting the chain of the cuffs.

34. Officer Dickerson yanked Mike to his feet and pushed Mike out the door and placed Mike over the hood of the HPD squad car. Officer Dickerson dug in Mike's pant's pockets, took out the contents and placed Mike in the back of the squad car. Mike, of course, did not consent to any of these actions during his arrest and was highly offended, embarrassed and humiliated by such treatment. During this time Officer Dickerson used several profanities.

35. Officer Dickerson then placed a cell phone call to the Harris County Assistant District Attorney (the ADA) assigned to accept charges at the time. Officer Dickerson told the ADA that Mike had assaulted him, when he had not, and he wanted the charges as severe as possible.

36. Officer Dickerson took a tape recorder from Mike's pocket, which had been recording the events, and listened to the contents as he drove and then Officer Dickerson erased a portion of Mike's recording.

37. During this time there was no probable cause or reasonable suspicion that a crime had been committed nor was Mike a danger to anyone.

38. Upon information and belief there have been numerous other detentions and searches of persons and belongings without probable cause or reasonable suspicion when the suspect was a danger to anyone by the Houston police officers in the last ten years.

## V.
## TERMINATION DUE TO RACE, NATIONAL ORGIN, AND/OR RETALIATION

39. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

40. Defendants, by and through Defendants' agents, intentionally engaged in unlawful employment practices involving Plaintiff because of her Hispanic race and/or national origin. Plaintiff is Hispanic. Individuals that are Hispanic are members of a racial minority.

41. Plaintiff was qualified for the position of administrative assistant. During her last evaluation covering a period from August 10, 2013 until March 21, 2014, Plaintiff's immediate supervisor, Jacky Muniz, gave Plaintiff and overall rating of "4" which indicated that Plaintiff "frequently exceeds expectations." Ms. Muniz indicated that nothing would delay or prevent promotion and/or advancement in the future. But rather advancing Plaintiff's career, the HCDAO placed her on administrative pay and eventually terminated her because she is Hispanic.[1]

[1] Plaintiff also argues that she was terminated in retaliation for lodging a complaint with IAD, as explained in the following paragraphs.

42. Plaintiff was treated less favorability than other similarly situated employees outside her protected group. Sonya Dicks, a black female, was an administrative assistant in the central records division and who, like Plaintiff, was also supervised by Belinda Hill. Like Plaintiff, Ms. Dicks also had a relative who was suspected and convicted of criminal activity, in this instance her brother, but Ms. Dicks was not terminated by Belinda Hill, and, to the best of Plaintiff's knowledge, did not receive any discipline and retained her position. In another example, Plaintiff can point to an employee of the Harris County District Attorney's office who was actually suspected of criminal activity, but who was not terminated and, to the best of Plaintiff's knowledge, did not receive any discipline. This individual was Naomi Lines, a white female, who was, like Plaintiff, and administrative assistant supervised by Belinda Hill. Ms. Lines was arrested and/or detailed for drunk driving in August, 2014, but, to the best of Plaintiff's knowledge, was not suspended and retained her position with the Harris County District Attorney's Office. Plaintiff can point to other individuals, including Lester Blizzard and Joshua Somers who were treated more favorably. Mr. Blizzard was arrested for DWI in 2011 and refused to take a breath test, but was hired by the HCDAO. Mr. Somers was present during a crime involving alcohol and assault, but to the best of Plaintiff's knowledge, was not terminated. Both Mr. Blizzard and Mr. Somers were supervised by Belinda Hill.

43. Additionally, Plaintiff believes that she was retaliated against for lodging a complaint with IAD. On November 17, 2014, Plaintiff went to the Central Intake Office of HPD and gave a sworn statement to Sergeant Vaughn. In that sworn statement, Plaintiff complained of discrimination and racial profiling by HPD during a traffic stop by Officer Huerta and Officer Leal on November 14, 2014. Because Plaintiff's complaint required HPD to determine if Plaintiff's civil rights were violated during this traffic stop, Plaintiff believes that the filing of the IAD

complaint created a protected activity. Eventually, Plaintiff's complaint was assigned to Sergeant A. J. Zavala to investigate and Sergeant Zavala detailed his actions in an investigative report, dated January 8, 2015.

44. Although HPD and HCDAO are separate entities, HCDAO did have knowledge Plaintiff's actions at HPD. Sergeant A. J. Zavala's investigative report, dated January 8, 2015, shows that ADA Terese Buess told Sergeant Zavala that after the HCDAO was of "informed of Ms. Garcia's action on the above traffic stop by Officer S[____] [2] [HCDAO] opened an investigation on Ms. Garcia." According to Sergeant A. J. Zavala, ADA Buess further stated HCDAO did terminate Plaintiff from her employment on December 12, 2014 as a result of the investigation. Sergeant A. J. Zavala indicated that ADA Buess would elaborate on the findings, but did not indicate what those findings were in his January 8, 2015 investigative report.

45. On December 19, 2014, Plaintiff was terminated. At the time of her termination, Plaintiff did not know the reasons for her termination and did not know the findings of the HCDAO investigators (as apparently known by Sergeant A. J. Zavala as conveyed to him by ADA Buess). After Plaintiff was terminated, Plaintiff received a copy of a memo from ADA Belinda Hill to DA Devon Anderson, dated December 12, 2014. The December 12, 2014 memo appears to contain the findings of the HCDAO investigators. The memo also shows that ADA Hill recommended to DA Anderson that "Ms. Garcia's employment be terminated" and that the normal channels through the Human Resource Department were not utilized to terminate Plaintiff.

46. The findings, as contained in the December 12, 2014 memo, refer to vague allegations of Plaintiff's deception or changing her story. In one apparent example of deception, the memo indicates that Plaintiff refused to give the HCDAO investigators copies of videos on her

---

[2] The full name of this Officer is redacted.

cell phone. However, Sergeant A. J. Zavala's investigative report indicates that three videos were given to him by ADA Terese Buess. Plaintiff recalls that she did give the HCDAO investigators copies of videos taken off of her cell phone. Because she disclosed the videos to the HCDAO investigators (which gave them to Sergeant A. J. Zavala by ADA Buess), Plaintiff was not deceptive. This is contrary to the findings as contained in the December 12, 2014 memo. Plaintiff believes that the reasons given for her termination, as reflected in the December 12, 2014 memo, are pretextual.

47. Thus, Plaintiff believes that the Defendants discriminated and/or retaliated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment in violation of 42 U.S.C. § 2000e, et seq ("Title VII"). Because Plaintiff was also terminated by the DA Anderson herself or Ms. Anderson delegated that authority to ADA Hill, the First Assistant, (thus circumventing the entire Human Resource Department), Plaintiff also sues under 42 U.S.C. § 1983. § 1983 allows for suits against local governments for the acts of its own policymaking officials. Here, the policymaking officials of the HCDAO, either DA Anderson herself or ADA Hill (in her capacity as First Assistant), unlawfully terminated the Plaintiff. Therefore, in addition to any claims under Title VII, Defendants are also liable under 42 U.S.C. § 1983.

48. The effect of these practices deprived Plaintiff of equal employment opportunities and adversely affected her status as an employee. As a result of the discrimination and/or retaliation by the Defendants, Plaintiff suffered damages for which Plaintiff herein sues.

## INJUNCTIVE RELIEF

49. Plaintiff seeks injunctive relief including without limitation, requiring the HCDAO to implement new policies and procedures sufficient to promote Hispanic individuals into positions

within Harris County District Attorney's Office. Plaintiff also seeks an injunction implementing a shielding policy protecting employees from being retaliated against after they lodge complaints against HCDAO or any other law enforcement entity, including HPD, complaining of discrimination.

50. Plaintiff seeks and is entitled to appropriate injunctive relief. Courts may enjoin employment practices that are found to be unlawful under Title VII when it is found that the violation was intentional. 42 U.S.C. §2000e-5(g). The intent which must be shown as a basis for injunctive relief "is merely the intent to do the act which has discriminatory effect; it is not necessary for the plaintiff to show that the defendant intended to discriminate." Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d 1221, 1239 (10th Cir. 1997).

51. The Fifth Circuit has long held that a grant of injunctive relief is mandatory absent clear and convincing proof that there is no reasonable probability of further non-compliance with the law. James v. Stockham Valves & Fittings Co., 559 F.2d 310, 354 (5th Cir. 1977). Additionally, the danger of future violations is shown when the defendant has not voluntarily ceased engaging in discriminatory actions or has not adequately acknowledged wrongdoing. EEOC v. Ilona of Hungary, Inc., 108 F.3d 1569, 1579 (7th Cir. 1997) (granting permanent injunction when primary decision makers offered no evidence to suggest they would cease discriminating); Roe, 124 F.3d at 1231 (employer's defiant hostility to amending policy which violated the ADA indicated danger of recurrence).

52. Here, there exists a reasonable probability of further non-compliance with Title VII by the Defendant. Plaintiff believes that there is a danger of recurrent violations, because, like the employers in Ilona of Hungary, Inc. and Roe, the Defendants have failed both to voluntarily cease engaging in discriminatory actions and to acknowledge their wrongdoing. This is evident from the

fact Ms. Garcia was not given an adequate explanation for the reasons for her termination, but then later learned about the reasons for her termination after receiving a copy of her employment file through an open records request. The employment file received through an open records request contained a memo, dated December 12, 2014, which appeared to indicate the reasons for Plaintiff's termination. Plaintiff believes the allegations of her dishonesty in the December 12, 2014, correspondence are false, she argues that those reasons are pre-textual; Plaintiff was terminated not for the reasons contained in the correspondence, but because she is Hispanic or in retaliation for lodging a complaint with IAD. Furthermore, as stated above, Plaintiff believes she can show that other employees of the HCDAO committed very serious violations of misconduct, yet were not terminated or put on administrative leave pending an investigation.

53. The December 12, 2014 memo also indicated that normal channels for terminating an employee through the Human Resources Department were circumvented. ADA Belinda Hill, the First Assistant, or DA Anderson herself were directly responsible for Plaintiff's termination. This evidence shows that discrimination has become the official policy of the Harris County District Attorney's Office. Plaintiff alleges that these facts, if proven as true, as well as others, show that she is entitled to injunctive relief.

## VI.
## 42 U.S.C. SECTION 1983

54. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

55. Defendants Office Leal, Officer Huerta, Officer Jones, and Officer M.S. and City of Houston during and after the traffic stop violated plaintiff's rights to Freedom of Speech, to Petition the Government for Redress of Grievances and to be Free from Unreasonable Searches and Seizures in violation of the First, Fourth, and Fourteenth Amendments to the Constitution.

## VII.
## DAMAGES

56. Plaintiff has been damaged by the Defendants' violations of the foregoing statutes including lost wages and other compensation in the past and future, lost benefits, unpaid overtime, mental anguish, damages to reputation, and other general and special damages including punitive damages.

## VIII.
## REINSTATEMENT

57. In lieu of certain damages, Plaintiff also seeks reinstatement to her former position or to a position equivalent to her former position at the HCDAO, with back pay.

## X.
## ATTORNEYS' FEES

58. Plaintiff is entitled to attorneys' fees under 42 U.S.C. §1988, 42 U.S.C. 2000e, et. seq., 29 U.S.C. §216(b), and other applicable law. Plaintiff hereby designates the undersigned counsels to provide expert testimony as to the reasonableness of attorney's fees incurred in connection with this case. Plaintiff invokes the procedures as provided for under Fed. Rule Civ. Pro. Rule 54(d).

## XI.
## JURY DEMAND

59. Plaintiff demands a trial by jury as guaranteed by the Seventh Amendment to the United States Constitution, and other federal and state statutes.

**XII.**
**PUNIIVE DAMAGES**

60. The individual defendants actions and inactions were extreme and outrageous and shocking to the conscious and therefore, plaintiff seeks punitive damages against al individually named defendants.

**XIII.**
**OTHER RELIEF**

61. Plaintiff further seek prejudgment interest, postjudgment interest, Court costs, and such other relief to which they may show themselves justly entitled.

**PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Denise Garcia, respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants for damages in an amount within the jurisdictional limits of the Court; injunctive relief, exemplary damages, together with interest as allowed by law; costs of court; attorney's fees, and such other and further relief to which the Plaintiff may be entitled at law or in equity.

RESPECTFULLY SUBMITTED,
LAW OFFICE OF RANDALL L. KALLINEN PLLC

/s/ Randall L. Kallinen
Randall L. Kallinen
State Bar of Texas No. 00790995
Southern District of Texas Bar No.: 19417
Admitted, U.S. Supreme Court, 5th U.S. Circuit Court of Appeals,
& Southern, Eastern & Western Districts of TX
511 Broadway Street
Houston, Texas 77012
Telephone: 713.320.3785
FAX: 713.893.6737

Email: AttorneyKallinen@aol.com
Attorney for Plaintiff

THE OGG LAW FIRM, PLLC
3215 Mercer, Suite 100
Houston, Texas 77027
Tel: (713) 974-1600 Fax: (713) 621-2106

By: /s/ R. Scott Poerschke
R. Scott Poerschke
State Bar No. 24067822
Email: scott@ogglawfirm.com,
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that I have served a true and correct copy of the foregoing upon all counsel of record on this the 4th day of November, 2016, and pursuant to Federal Rules of Civil Procedure through the CM/ECF system or first class mail, as indicated below.

Connica Lemond
Attorney-in-Charge
Camela Sandmann
Senior Assistant City Attorney
901 Bagby
Houston, TX 77002

Barbara A. Callistien
Senior Assistant County Attorney
Patrick E. Nagorski
Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002

/s/ Randall L. Kallinen
Randall L. Kallinen