# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DENISE GARCIA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-16-2134 |
| | § | |
| HARRIS COUNTY, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION & ORDER

Pending before the court are (1) defendant City of Houston's motion to dismiss or, in the alternative, motion for a more definite statement (Dkt. 17); (2) defendant Harris County's motion to dismiss or, in the alternative, motion for a more definite statement (Dkt. 37); and (3) defendant Officers Timothy Huerta, Brittany Ann Jones, and M.S.'s (collectively, "individual defendant officers") motion to dismiss or, in the alternative, motion for a more definite statement (Dkt. 58). Having considered the motions, responses, replies, and the applicable law, the court is of the opinion that (1) the City of Houston's motion to dismiss (Dkt. 17) should be GRANTED; (2) Harris County's motion to dismiss (Dkt. 37) should be DENIED and its motion for a more definite statement should be GRANTED; and (3) the individual defendant officers' motion to dismiss (Dkt. 58) should be GRANTED IN PART and DENIED IN PART and their motion for a more definite statement should be DENIED.

## I. BACKGROUND

This case is about accusations of civil rights violations and the alleged unlawful termination of plaintiff Denise Garcia's employment at the Harris County District Attorney's Office ("HCDAO"). Dkt. 35. Garcia's allegations stem from her complaint about the police officers'

behavior during a traffic stop. *Id.* Garcia is suing Harris County, the City of Houston, and City of Houston Police Officers Richard Leal III, Huerta, Jones, and M.S. under 42 U.S.C. § 1983 and § 2000e ("Title VII").[1] *Id.*

On November 14, 2014, Garcia drove away from a relative's residence in Houston, with her toddler son and the child's father, Salvador Rodriguez, as passengers. *Id.* Several blocks from the residence, Garcia was pulled over by Officers Leal and Huerta. *Id.* at 3. Garcia alleges that she was "driving legally and committed no traffic violations." *Id.* The City of Houston and the individual defendant officers counter that Garcia was stopped for failing to signal to change lanes. Dkt. 41 at 5. The City of Houston admits that the police followed Garcia after seeing her at a location they were surveilling for drug activity. Dkt. 17 at 4. Garcia claims that she was at the location to pick up her child's father to go to a doctor's appointment. Dkt. 35 at 3.

Garcia states that she cooperated with the police through the duration of the stop and produced her driver's license and insurance information as requested. Dkt. 35 at 4. During the stop, the police officer began to question her passenger, Rodriguez. *Id.* Garcia says that she advised Rodriguez that he did not have to answer any questions. *Id.* Garcia alleges that immediately following her advice to Rodriguez, Officer Leal threatened Garcia with arrest, causing her to be frightened to speak to Rodriguez again. *Id.*

After checking Rodriguez's identification, the police found outstanding warrants against him and arrested him. *Id.* Garcia claims that she had no knowledge of the existence of any warrants or any criminal activity on the part of Rodriguez. *Id.*

---

[1] Officer Leal was served with Garcia's second amended complaint on May 17, 2017. Dkt. 64. His deadline to answer is on June 7, 2017, and at this time he has neither answered nor joined any of the motions to dismiss. *Id.* Therefore, the court does not address the claims against him in this Memorandum Opinion and Order.

Additionally, during the stop, Officers Leal and Heurta asked to search Garcia's vehicle. *Id*. Garcia claims that Officer M.S., who was working undercover at the residence where she picked up Rodriguez, instructed the other officers to attempt to search the vehicle. *Id*. at 3. Garcia claims she refused to give consent to the search. *Id*. Officers Leal and Heurta allegedly ordered Garcia to exit her vehicle, and searched her car, including the trunk, and Officer Jones searched Garcia's body. *Id*. at 4. Officer Heurta also placed Garcia in handcuffs and Garcia alleges she was held in a patrol car for approximately 45 minutes to an hour during Rodriguez's arrest. *Id*. Garcia alleges that during this detention, Officer Huerta seized her cell phone and erased "a section of her phone recordings of the events." *Id.* Eventually, Garcia was released. *Id*. at 5. The individual defendant officers admit to searching the car and Garcia and detaining Garcia, claiming their actions were lawful as incident to Rodriguez's arrest. Dkts. 17, 37, 41. The individual defendant officers deny deleting the contents of the cell phone video and claim that they only entered the trunk because Garcia gave them permission to look for her child's bottle in the trunk. *Id*.

On November 17, 2014, Garcia filed a complaint with the Houston Police Department Internal Affairs Division ("IAD") regarding the traffic stop. Dkt. 35 at 5. Garcia claimed that she was racially profiled and the traffic stop was illegal. *Id*. Garcia alleges that, after she filed the IAD complaint, "at least" Officer M.S. contacted the HCDAO regarding the complaint and that she was questioned by her employer about the events of the traffic stop. *Id*.

On November 20, 2014, the HCDAO placed Garcia on administrative leave with pay pending an investigation. *Id*. at 6. On December 19, 2014, the HCDAO terminated Garcia's employment. *Id.* Later, through an open records request, Garcia received a copy of a memo stating that she was terminated for dishonesty regarding both the traffic stop and her awareness of Rodriguez's criminal history. *Id*. Garcia alleges that she was honest at all times and these reasons were "pre-textual." *Id*.

On November 4, 2016, Garcia filed her second amended complaint against the defendants. Dkt. 35. First, Garcia asserts causes of action against Harris County under Title VII for termination due to race, national origin, and/or retaliation and under § 1983 for civil rights violations. Dkt. 34 at 10–13. Second, Garcia asserts causes of action against the individual defendant officers and the City of Houston under § 1983 for violation of her rights for freedom of speech, to petition the govenmernment for redress of grievances, and to be free from unreasonable searches and seizures, under the First, Fourth, and Fourteenth Amendments to the United States Constitution. Dkts. 35 at 15–16. The City of Houston, the individual defendant officers, and Harris County have all moved to dismiss Garcia's claims, or in the alternative, moved for a more definite statement. Dkts. 17 (City of Houston), 37 (Harris County), 58 (individual defendant officers). Garcia responded. Dkts. 36, 45, 61. The City of Houston and Harris County replied. Dkts. 41, 46.

## II. Legal Standards

### A.     Motion to Dismiss

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007). In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

4

action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 556.

**B.     Motion for a More Definite Statement**

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). However, motions for more definite statement are "generally disfavored." *Lehman Bros. Holding, Inc. v. Cornerstone Mortg. Co.*, No. 09-0672, 2009 WL 1504977, at *1 (S.D. Tex. May 29, 2009) (Rosenthal, J.) (collecting authorities). "When a defendant is complaining of matters that can be clarified and developed during discovery, not matters that impede his ability to form a responsive pleading, an order directing the plaintiff to provide a more definite statement is not warranted." *Id.* (citations omitted).

**C.     42 U.S.C. § 1983**

Section 1983 prohibits "persons" acting under the color of law from depriving another of any "rights, privileges, and immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. For a plaintiff to state a claim under § 1983, the plaintiff "must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).

Municipalities and cities qualify as "persons" under § 1983. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690, 98 S. Ct. 2018 (1978). To state a claim for municipal liability under § 1983, a plaintiff must identify (a) a policymaker, (b) an official policy or custom or widespread practice, and (c) a violation of constitutional rights whose "moving force" is the policy or custom. *Id.* at 694; *see*

*also Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) ("[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." ).

### III. INDIVIDUAL DEFENDANT OFFICERS' AND CITY OF HOUSTON'S MOTIONS TO DISMISS

The City of Houston and the individual defendant officers filed motions to dismiss Garcia's second amended complaint for failure to state a claim, or alternatively, a motion for a more definite statement. Dkts. 17; 41; 58.[2] The court will consider Garcia's objection to evidence offered with the individual defendants officers' motion to dismiss, then consider the motions to dismiss the Title VII claim and the § 1983 claims, and finally turn to the alternative motions for a more definite statement.

### A. Garcia's Objection

The individual defendant officers included the police report as an exhibit to their motion to dismiss. Dkt. 58, Ex. A. Garcia objects to the court considering the exhibit. Dkt. 61 at 3. Additionally, Garcia objects to the individual defendant officers' recitation of some of the facts that differ from her allegations in the second amended complaint. Dkt. 61 at 6. For a motion to dismiss, the court accepts all well-pled facts contained in Garcia's second amended complaint as true, despite arguments or exhibits disputing those facts offered in the defendants' motions to dismiss. *Twombly*, 550 U.S. at 555; *Avondale Shipyards*, 677 F.2d at1050. Therefore, Garcia's objections (Dkt. 61 at 6) are SUSTAINED.

---

[2] The City of Houston's live motion to dismiss (Dkt. 17) was filed in response to Garcia's first amended complaint. On November 4, 2016, Garcia both responded to the City of Houston's motion to dismiss and filed her second amended complaint. Dkts. 35, 36. The City of Houston replied and in its reply, it addressed Garcia's second amended complaint. *See* Dkt. 41 at 7. The court interprets the City of Houston's reply as reasserting its motion to dismiss as a responsive pleading to the second amended complaint and will address the motion accordingly.

## B.     Title VII Claims

With respect to the Title VII cause of action, Garcia's second amended complaint charges that "the Defendants discriminated and/or retaliated against [her] in connection with . . . [her employment]." Dkt. 35 at 13. "Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin." *Boyd v. State Farm Ins. Co.*, 158 F.3d 326, 328 (5th Cir. 1998) (citing 42 U.S.C. § 2000–2(a)). However, even though Garcia uses the term "Defendants" collectively in her second amended complaint with respect to her Title VII cause of action, Garcia only states facts that establish that one co-defendant, Harris County, as her employer. Dkt. 35.

The City of Houston, having never employed Garcia, argues that it cannot "intentionally engage in unlawful employment practices" with respect to her termination under Title VII. Dkt. 17 at 9 (quoting Dkt. 35 at 10). The City of Houston makes its motion to dismiss "assuming" that Garcia is only asserting § 1983 claims against it, not a Title VII claim. *Id.* Garcia does not challenge this assumption in her response. Dkt. 36. The court agrees that Garcia's second amended complaint does not establish how the City of Houston could engage in an employment action against a non-employee.

Garcia also references "retaliation" when describing the allegations of her Title VII complaint. Dkt. 35 at 10–11. Title VII permits a retaliation claim in instances in which an employee has complained of an unlawful employment practice or made a Title VII charge against an employer and the complaint is a motivating factor of the adverse employment action. 42 U.S. § 2000e–3(a). Here, though, Garcia is not alleging that she made any complaints regarding unlawful employment practices or under Title VII prior to her termination. Dkt. 35. Therefore the court concludes that Garcia's retaliation claim is brought under §1983, not Title VII.

To the extent that Garcia may be attempting to assert a Title VII claim against the City of Houston or any other defendant besides Harris County, the court finds that this claim should be DISMISSED.

**C.     § 1983 Claims**

First, the court will address the individual defendant officers' and the City of Houston's arguments that Garcia's claims should be dismissed because she did not establish that she had her Constitutional rights violated, as required for a § 1983 claim.  Dkt. 17 at 9; Dkt. 37 at 10–14.  Then, with respect to the surviving claims, the court will turn to the individual defendant officers' defense of qualified immunity.  Dkt. 37 at 8–9.  Finally, the court will address the City of Houston's argument that Garcia did not establish that it should be subject to municipal liability under § 1983. Dkt. 17 at 11–13; Dkt. 41 at 10–13.

*1. Constitutional Violations*

Garcia asserts that the individual defendant officers and the City of Houston violated her rights to the freedom of speech, to petition the government for redress of grievances, and to be free from unreasonable searches and seizures in violation of the First, Fourth, and Fourteenth Amendments of  the United States Constitution or that the defendants retaliated against her for the exercise of those rights.  Dkt. 35 at 15.  In their motions to dismiss, the individual defendant officers and the City of Houston argue that Garcia's rights were not violated.  Dkt. 17 at 10; Dkt. 58 at 9.

*a. Freedom of Speech and Freedom to Petition*

Garcia claims that her First Amendment rights to speech and to petition the government for redress of grievances were violated or that she was terminated in retaliation for exercising these rights.  Dkt. 35 at 11-13.  Garcia alleges her rights were violated during two instances of her First

Amendment conduct: (1) her advice to her boyfriend to remain silent while being questioned during the traffic stop, and (2) her filing of the IAD complaint.

To assert a claim for violation of the right of freedom of speech under the First Amendment, Garcia must establish that "(1) [she] was 'engaged in constitutionally protected activity;' (2) [the defendants'] actions caused [her] 'to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity;' and (3) [The defendants'] adverse actions 'were substantially motivated against [Garcia's] exercise of constitutionally protected conduct.'" *Singleton v. Darby*, 609 F. App'x 190, 193 (5th Cir. 2015) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)).

"The right to petition [the government for redress of grievances] is cut from the same cloth as the other guarantees of [the First] Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482, 105 S. Ct. 2787 (U.S. 1985). Therefore, the court will address Garcia's complaints under freedom of speech and the right to petition collectively as a First Amendment claim. *See Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 398, 131 S. Ct. 2488 (2011) ("The framework used to govern Speech Clause claims by public employees, when applied to the Petition Clause, will protect both the interests of the government and the First Amendment right."); *Gibson v. Kilpatrick*, 838 F.3d 476, 481 (5th Cir. 2016) ("Retaliation claims under both [the Speech Clause and the Petition Clause] are analyzed in the same way").

First, Garcia alleges that her right to the freedom of speech was violated when she was silenced from giving Rodriguez advice by Officer Leal's threat of arrest. Dkt. 35 at 4. The City of Houston and the individual defendant officers do not address this particular speech in their motions to dismiss, but rather make a general argument that none of Garcia's rights were violated. Dkts. 17, 41, 58. Garcia does not allege any involvement on the part of Officers Jones or M.S. in the threat,

only Officer Leal and Officer Heurta. Dkt. 35 at 4. Therefore, the court concludes that the claim regarding this instance of speech with respect to Officer Jones and Officer M.S. should be DISMISSED. *Id.*

With respect to the claim against Officer Huerta, Garcia does not allege that Officer Heurta actually heard the threat, only that he was within "earshot." The court does not find that this alleged action, which the court infers as hearing another officer issue this threat, would serve to chill speech nor has Garcia made any argument that Officer Huerta's action was substantially motivated to stifle Garcia from exercising her First Amendment rights. *Singleton*, 609 F. App'x at 193. Therefore, the court concludes that Garcia's claim against Officer Heurta for this instance of speech should be DISMISSED.

Second, Garcia alleges that she was retaliated against for exercising her right to the freedom of speech and right to petition because her termination was caused by her filing of an IAD complaint with the Houston Police Department following the traffic stop. Dkt. 35 at 11. The defendants offer various narratives regarding when and how Garcia's employer was contacted regarding the events associated with the traffic stop. *See* Dkt. 41 at 2 and Dkt 48 at 55 (alleging that the HCDAO was called by an IAD investigator after the decision to terminate Garcia was made). *But see* Dkt. 41 at 14 and Dkt. 58 at 11 (stating that Officer M.S. called the HCDAO the day of the traffic stop and prior to the filing of the IAD complaint). Though results of the legal analysis may be dependant on the timeline, for the purposes of the motion to dismiss, the court must accept Garcia's well-pled facts as true—that Officer M.S. contacted the HCDAO after Garcia filed her IAD complaint but before she was terminated. Dkt. 35 at 5.

As an initial matter, the individual defendant officers and the City of Houston challenge the retaliation cause of action because they were not Garcia's employer and did not terminate her

themselves. Dkt. 17 at 9. However, the Fifth Circuit has allowed retaliation claims to proceed against defendants who indirectly caused the termination of a plaintiff without being his direct employer. *See, e.g., Culbertson v. Lykos*, 790 F.3d 608, 619 (5th Cir. 2015) (holding a third-party accountable for retaliation based on indirect actions sufficiently related to the termination); *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 603 (5th Cir.2001) (imputing a defendants' improper motives to an employer when the decision was made based on the defendants' motivations). Therefore, the court concludes that the complaint should not be dismissed on these grounds.

The court now turns to whether Garcia's second amended complaint states a claim of First Amendment retaliation. For a First Amendment retaliation claim, Garcia must show that "(1) [s]he suffered an adverse employment action; (2) [her] speech involved a matter of public concern; (3) [her] interest in speaking outweighs the employer's interest in promoting efficiency in the workplace; and (4) [her] speech motivated the employer's adverse employment action." *Gibson*, 838 F.3d at 481 (citing *Charles v. Grief*, 522 F.3d 508, 510 n.2 (5th Cir. 2008)). First, it is well-established that termination of employment is an adverse employment action. *Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir.) (quoting *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) ("Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands."). Second, in the Fifth Circuit, complaints regarding police misconduct are always treated as matter of public concern, so the IAD complaint qualifies as a matter of public concern. *Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 381 (5th Cir. 1999) ("[S]peech regarding police misconduct constitutes a matter of public concern."). Third, none of the defendants make an argument that HCDAO's interest in an efficient workplace outweighs the importance of an IAD complaint.

Having pled facts in support of meeting these three elements in her complaint, Garcia must finally plead facts that her speech—filing the IAD complaint—was the reason for her termination. *Gibson*, 838 F.3d at 481. Garcia admits that her file states she was fired for lying about the events of the traffic stop, not for the IAD complaint, but she also alleges this is a "pre-textual" excuse. Dkt. 35 at 6. Given Garcia's allegations regarding the timeline of her termination, the allegation that Officer M.S. contacted HCDAO directly about the IAD complaint, and the questioning Garcia was subjected to about the traffic stop, the court concludes that Garcia has stated a sufficient factual basis to support her claim that she was terminated in retaliation for filing the IAD complaint. *Kilpatrick*, 838 F.3d at 481. Therefore, the court concludes that Garcia has sufficiently pled enough facts to support a claim of First Amendment retaliation. *Gibson*, 838 F.3d at 481.

Finally, Officers Jones and Heurta argue that they should not be held responsible for Officer M.S.'s phone call to the HCDAO. Dkt. 58 at 14. Garcia's second amended complaint states "at least Officer M.S." contacted Harris County. Dkt. 35 at 5. Garcia did not allege any of the other individual defendant officers contacted the HCDAO regarding her IAD complaint. Dkt. 35; Dkt. 41 at 14. The court concludes that the retaliation allegations against the Officers Jones and Heurta should be DISMISSED. However, the court concludes Garcia has properly stated a claim against Officer M.S. for committing First Amendment retaliation.

### b. *Unreasonable Search and Seizure*

Garcia claims that her Fourth Amendment right to be free of an unreasonable search and seizure was violated by the following actions: (1) the search of her car, (2) her detention in a patrol car during Rodriguez's arrest, and (3) the deletion of her cell phone video. Dkt. 16 at 9–11; Dkt. 35 at 4. The Fourth Amendment offers protection against an unreasonable search and seizure. *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001). During a traffic stop, limited searches and

seizures are permitted when there is a "reasonable and articulable suspicion that a person has committed a crime." *United States v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868 (1968)).

The parties each make arguments about whether Garcia's detention was for a reasonable length of time, whether the search of Garcia and her car was supported by the circumstances of the stop, and whether Garcia's detention was reasonable during Rodriguez's arrest. Dkt 36 at 9–13; Dkt. 41 at 5–13; Dkt. 58. The City of Houston and the individual defendant officers argue that their actions were reasonable given what they observed before and during the traffic stop and arrest of Rodriguez, and that Garcia's claims should therefore be dismissed. *Id.* Neither the City of Houston nor the individual officer defendants address the accusation that one of the officers deleted Garcia's cell phone video. *Id*.

The court need not reach any conclusions on these disputes for the purposes of the motions to dismiss. As a threshold matter, Garcia alleges that she was not violating any traffic laws when Officers Leal and Heurta initiated the traffic stop. Dkts. 35 at 3; 61 at 11. Under *Terry*, the analysis for whether a search following a traffic stop is permissible under the Constitution begins with a determination of whether there was reasonable suspicion for the stop and whether "the officer's action was justified at its inception." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc) (citing *Terry*, 392 U.S. at 19–20). For a motion to dismiss, the court must accept Garcia's well-pled facts as true. *Twombly*, 550 U.S. at 555. Accepting the fact that Garcia did not violate any traffic laws as true, the officers had no reasonable suspicion to perform the traffic stop, and, consequently, any subsequent search or seizure would be a violation of Garcia's rights. *Brigham*, 382 F.3d at 506. Therefore, Garcia properly stated a claim of violation of her Fourth Amendment rights to be free from an unreasonable search and seizure.

*c. Fourteenth Amendment*

The City of Houston argues that the Fourteenth Amendment is not applicable to Garcia's claims because Garcia's detention and search was not an arrest, so it does not implicate due process concerns of an arrest without probable cause. Dkt. 17 at 10–11 (citing *Graham v. Connor*, 490 U.S. 386, 386, 109 S. Ct. 1865 (U.S. 1989)). In response, Garcia argues that she was arrested when she was handcuffed and placed in the patrol car, and so the Fourteenth Amendment is implicated. Dkt. 36 at 9 (citing *United States v. Vargas*, 643 F.2d 296, 298 (5th Cir. 1981)). The Fifth Circuit has held that the use of handcuffs singly or in combination with other forms of detention does not automatically turn an investigatory detention into an arrest. *United States v. Campbell*, 178 F.3d 345, 349 (5th Cir. 1999) (citing *United States v. Sanders*, 994 F.2d 200, 206–07 (5th Cir.1993)). "Whether a detention is an arrest or merely a *Terry*-stop depends on the 'reasonableness' of the intrusion under all the facts." *United States v. Abdo*, 733 F.3d 562, 565 (5th Cir. 2013). "[P]olice may take reasonable actions under the circumstances to ensure their own safety, as well as the safety of the public, during an encounter with a suspect." *Id*.

Because Garcia's second amended complaint includes assertions that she was cooperative and that she had not committed a traffic violation (making the stop without reasonable suspicion), she has stated a claim that her detention may not have been a reasonable intrusion or necessary for the safety of the police or public given the circumstances. Dkt. 35.

In summary, Garcia has stated a claim for violations of her rights under the First Amendment for retaliation by Officer M.S., the Fourth Amendment for unreasonable search and seizure, and under the Fourteenth Amendment for her detention. Now, the court turns to the individual defendant officers' defense of qualified immunity.

*2. Qualified Immunity.*

Qualified immunity shields federal and state officials from civil damages liability under § 1983 in their individual capacities unless a plaintiff can show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2077 (2011); *see also Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013). When an official asserts qualified immunity, the first step is to identify the allegedly infringed constitutional right. *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865 (1989). The second step is to "ask whether the right was clearly established; that is, whether it would be clear to a reasonable [official] that [the official's] conduct was unlawful in the situation [the official] confronted. . . . If an [official] makes a reasonable mistake as to what the law requires, [the official] is entitled to immunity." *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001) (citations and internal quotation marks omitted). The court has already addressed the allegedly infringed upon constitutional rights, so it will turn to the second step of the analysis.

First, for Garcia's unreasonable search and seizure and detention claims, it is a well-established principle that a traffic stop requires reasonable suspicion and that performing a stop and subsequent search without such suspicion is a violation of a constitutional right. *Terry*, 392 U.S. at 19–20. Because this right is clearly established, if Garcia's allegations are taken as true, then the individual defendant officers' cannot claim qualified immunity.

Second, the court considers the First Amendment retaliation complaint against Officer M.S. Because the individual defendant officers' motion to dismiss is based on a different timeline of events in which Officer M.S. contacts the HCDAO before the IAD complaint rather than after, they do not make an argument with regard to their qualified immunity on this claim. Dkt. 58. Further, the court has already addressed how Garcia has established a claim that her First Amendment rights

may have been violated by Officer M.S. as a matter of well-established law. *See supra* pp. 8–11. Therefore, at the motion to dismiss stage, Officer M.S. cannot establish that he is entitled to qualified immunity on this claim.

### 3. City of Houston's Municipal Liability

The City of Houston also argues that Garcia's second amended complaint has not stated a claim to support a finding of municipal liability. Dkt. 17 at 11 (citing to *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690, 98 S. Ct. 2018 (1978)). To meet the "official policy" element of a § 1983 claim under *Monell* against a municipality, the plaintiff must either allege (1) a written policy or procedure that is officially adopted or promulgated by the policymaking authorities of a governmental agency; or (2) a persistent, widespread practice of governmental agency officials or employees which, although not officially promulgated or adopted, is so common and well settled as to constitute a policy or custom that fairly represents the agency's policy. *Piotrowski*, 237 F.3d at 579.

"The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)). "Allegations of an isolated incident are not sufficient to show the existence of a custom or policy." *Fraire*, 957 F.2d at 1278; *see also Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) ("'[I]solated unconstitutional actions by municipal employees will almost never trigger liability.'" (quoting *Piotrowski*, 237 F.3d at 578)). For a *Monell* claim, the plaintiff must establish a widespread practice or custom by providing evidence of numerous similar incidents. *See Pineda v. City of Hous.*, 291 F.3d 325, 329 (5th Cir. 2002) (finding insufficient incidents to create enough evidence of a municipal custom of illegal conduct).

16

Here, Garcia argues that she purposely amended her complaint to include three specific incidents of improper Houston Police Department searches and seizures. Dkt. 61 at 4. However, all these events occurred before 2009 and are not similar to Garcia's case. For instance, none involves a traffic stop. Dkt. 35 at 7–8. Garcia also alleges in her complaint a failure to train without providing any supporting facts or example incidents. *Id*. at 5. Additionally, Garcia's second amended complaint does not allege any other prior instances of the City of Houston retaliating against public employees for IAD complaints or that it has any policy or practice of doing so.

The City of Houston argues that these three incidents, absent other allegations, are insufficient to establish a municipal custom, policy, or practice.[3] Dkt. 17 at 12. The court agrees, these three incidents occurring five years before Garcia's traffic stop are not sufficiently numerous or similar to support an argument that Garcia's complaint is a result of a widespread custom or practice of the municipality.

Therefore, the court finds that Garcia's complaint, even as amended, is insufficient to state a claim that the alleged violations of her First, Fourth, and Fourteenth Amendment rights are the result of a municipal custom, policy, or practice on the part of the City of Houston. *Monell*, 436 U.S. at 690. The court concludes that the City of Houston's motion to dismiss should be GRANTED. Dkt. 17.

---

[3] Garcia also makes an indirect challenge to having to plead more facts by reminding the court that the Supreme Court rejected any heightened pleading standard for municipal liability claims. Dkt. 61 at 7 (citing *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S. Ct. 1160 (1993)). This court is not applying a heightened pleading standard to these claims, but is merely requiring that the second amended complaint be pled with the specificity required by Federal Rule of Civil Procedure 12(b)(6).

**D.      Motion for a More Definite Statement and Leave to Amend**

Both City of Houston and the individual defendant officers filed an alternative motion for a more definite statement. Dkt. 17 at 4; Dkt. 58 at 15. Because the court has dismissed Garcia's claims against the City of Houston, its alternative motion for a more definite statement is DENIED AS MOOT. Dkt. 17. With respect to the individual defendant officers, the court finds that the claims against them are neither vague nor ambiguous. The court concludes the individual defendant officers' motion for a more definite statement should be DENIED. Dkt. 58.

Second, in her responses, Garcia asks that the court to allow her the opportunity to amend in lieu of dismissal. Dkt. 36 at 4; Dkt 61 at 12. Garcia already amended her complaint twice prior to the court's deadline for amendment. After the deadline for amendments has passed, Rule 15(a)(2) of the Federal Rules of Civil Procedure allows a party to "amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend should be freely given absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of [the] amendment." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962).

Garcia does not present the court with a proposed amendment or explain how an amended complaint would permit her claims to survive another Federal Rule of Civil Procedure Rule 12(b)(6) motion to dismiss. When a party makes "'a bare request in opposition to a motion to dismiss [,] without any indication of the particular grounds on which the amendment is sought[,] . . . [its request] does not constitute a motion within the contemplation of Rule 15(a).'" *See U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (quoting *Confederate Mem'l Ass'n v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)) (internal punctuation omitted); *see also*

*Nolasco v. CitiMortgage, Inc.*, No. H-12-1875, 2012 WL 3648414, at *7 (S.D. Tex. Aug. 23, 2012) (denying a motion for leave to amend when the plaintiff did not present the court with reasons to support the survival of an amended complaint).

Garcia has failed to cure any pleading deficiencies with her prior two amendments and the court concludes that any additional amendments by Garcia would be futile. Therefore, Garcia's motions for leave to amend her complaint against the individual defendant officers (Dkt. 61 at 12) and the City of Houston (Dkt. 36 at 7) are DENIED.

## IV. HARRIS COUNTY'S MOTION TO DISMISS

Harris Count filed a motion to dismiss, or alternatively, a motion for a more definite statement regarding Garcia's causes of actions against it under § 1983.[4] Dkt. 37. Harris County is not moving to dismiss Garcia's Title VII claims. *Id*. at 2 ("Plaintiff's amended pleadings provided sufficient notice of her claims against the county, to proceed under Title VII, [and] the county filed an answer. . . ."). Harris County argues that Garcia's second amended complaint is defective in two ways: (1) it does not identify "an official policy, custom or widespread practice" as required for municipal liability under *Monell*; and (2) it fails to allege the specific constitutional violation that Garcia is charging. Dkts. 37, 46 (citing *Monell*, 436 U.S. at 690)).

---

[4] Harris County suggests that there may be a dispute over whether its present motion to dismiss is allowed as a responsive pleading to the second amended complaint. Dkt. 37 at 2; *See* Dkt. 36 at 2 (addressing Harris County's mooted motion to dismiss (Dkt. 12)). However, the court does not find any indication in Garcia's response to the live motion to dismiss that she is asserting this argument. Dkt. 45. To the extent that this is an issue, "[an] amended complaint supersedes the previous complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *see, e.g.*, *U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 322 (5th Cir. 2016); *Sam v. La.*, 409 F. App'x 758, 762 (5th Cir. 2011). Here, the second amended complaint superseded the first amended complaint, rendering it of no legal effect. Therefore the defendants are entitled to file a responsive pleading, including a motion to dismiss, in response to the second amended complaint. *Tangipahoa Par. Sch. Bd.*, 816 F.3d at 322 ("[A] defendant may file a new responsive pleading" following the amendment of a complaint.).

First, Harris County argues that Garcia's complaint does not specify an "an official policy, custom or widespread practice" of Harris County that would subject it to liability. Dkt. 37 at 5–6. Garcia counters that her claim of liability is based on the decision of someone with "final policymaking authority," making it an official policy of Harris County. Dkt. 45 at 2 (citing to *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct.. 915 (1988)). "A single decision by a policymaker to follow a course of action can be considered municipal policy." *Culbertson v. Lykos*, 790 F.3d 608, 624 (5th Cir. 2015); *see also Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 602 (5th Cir. 2001); *Brady v. Fort Bend Cty.*, 145 F.3d 691, 698 (5th Cir. 1998) ("[A] single action by a municipal official possessing final policymaking authority regarding the action in question constitutes the official policy of the municipality . . . ."). Determining if a party is a final policymaker is not an "all or nothing" inquiry and the party need not be responsible for all the policy of the municipality. *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 785, 117 S. Ct. 1734 (1997). However, the policymaker must be the final policymaker "in that area" or "on that particular issue" of the business of the municipality. *Id.*; *Praprotnik*, 485 U.S. at 123. The official's status as a policymaker is a matter of state law. *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S. Ct.. 2702 (1989).

Here, Garcia argues that the decision to terminate her was made by Devon Anderson, the District Attorney, or by delegated authority to Belinda Hill, her first assistant. Dkt. 35 at 3. Further, Garcia points to Texas statutory authority that states that the county district attorney has authority over the employment of office personnel. Dkt. 45 at 7 (citing to Tex. Gov't Code Ann. § 41.102). Garcia buoys her argument with the allegation that the termination decision was made without following the appropriate Harris County human resources procedures. *Id.* Harris County's brief reply does not challenge Garcia's allegations that a "final policymaker" made the decision to

terminate Garcia. Dkt. 46. The court finds that Garcia has asserted enough facts to state a claim that the decision for her termination was made by a final policymaker, and, on those grounds, represents an official policy of the municipality. Therefore, the court concludes that Harris County's motion to dismiss on these ground should be DENIED. Dkt. 37.

Second, Harris County argues that Garcia's claim did not state the specific constitutional violation that was behind the decision to terminate her. Dkt. 37 at 6–7. Garcia's second amended complaint alleges facts in association with First, Fourth, and Fourteenth Amendment constitutional violations. Dkt. 35. However, Garcia fails to identify which of these specific constitutional violations are implicated in her cause of action against Harris County rather than its co-defendants. Dkt. 35 at 13 (stating only that Garcia "also sues" Harris County under § 1983). Though Garcia later describes causes of action for specific constitutional violations of her rights to freedom of speech, to petition the government for redress of grievances, and to be free from unreasonable searches and seizures, the facts describing each of these causes of action only identify the police officers and the City of Houston as violating those rights. Dkt. 35 at 16. Some of the alleged facts in the second amended complaint are unlikely to apply to the claims against Harris County (e.g. Garcia's Fourth Amendment claims regarding the search of her car). Dkt. 35 at 4. But some of the alleged facts in the second amended complaint might be intended to apply to Harris County (e.g. Garcia's claim of free speech retaliation). *Id*. at 10.

Therefore, the court concludes Garcia's second amended complaint is too vague and ambiguous for Harris County to reasonably prepare a response to the § 1983 claims as stated. Harris County's alternate motion for a more definite statement is GRANTED. Dkt. 37. Garcia is ORDERED to amend her pleading within twenty (20) days of the date of this order, with the

amendment limited to the specifics necessary to establish the legal and factual bases of her § 1983 claims against Harris County.

## V. CONCLUSION

The individual defendant officers' motion to dismiss is DENIED IN PART and GRANTED IN PART. Dkt. 58. The individual defendant officers' motion to dismiss is DENIED IN PART with respect to Garcia's claims against the individual defendant officers under the Fourth and Fourteenth Amendments and against Officer M.S. for First Amendment retaliation for filing the IAD complaint. *Id*. The individual defendants officers' motion to dismiss is GRANTED IN PART with respect to Garcia's claims against the Officers Heurta and Jones for violation of her First Amendment rights and Officer M.S. for First Amendment violation regarding her giving advice to Rodriguez to stay silent and the claims are DISMISSED WITH PREJUDICE. *Id*. The individual defendant officers' alternate motion for a more definite statement is DENIED. *Id.*

The City of Houston's motion to dismiss is GRANTED. Dkt. 17. The City of Houston's alternate motion for a more definite statement is DENIED AS MOOT. *Id*. Garcia's claims against the City of Houston are DISMISSED WITH PREJUDICE. *Id.*

Garcia's request for leave to amend her complaint against the City of Houston (Dkt. 36 at 4) and the individual defendant officers (Dkt. 61 at 12) is DENIED.

Harris County's motion to dismiss is DENIED. Dkt. 37. Harris County's alternate motion for a more definite statement is GRANTED. Dkt. 37. Garcia is ORDERED to amend her complaint within twenty (20) days of the date of this order, subject to the limitations described herein.

Signed at Houston, Texas on June 2, 2017.

_____
Gray H. Miller
United States District Judge