UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DENISE GARCIA, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-16-2134 |
| | § | |
| HARRIS COUNTY, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the court is defendants Richard Leal, Timothy Huerta, Brittany Jones, and M.S.'s ("Officer Defendants" or "Defendants") motion for summary judgment. Dkt. 112. Plaintiff Denise Garcia responded. Dkt. 130. Defendants replied. Dkt. 133. Having considered the motion, response, reply, record evidence, and the applicable law, the court is of the opinion that the Officer Defendants' motion for summary judgment should be GRANTED IN PART and DENIED IN PART.

### I. BACKGROUND

This is a civil rights and unlawful termination case. Garcia, a former Harris County District Attorney's Office ("DAO") employee, alleges that City of Houston police officers violated her civil rights during a traffic stop and that Harris County unlawfully terminated her for reporting those violations. Dkt. 92. Garcia is suing Harris County and Officers Leal, Huerta, Jones, and M.S. Dkt. 92; Dkt. 67 at 22 (dismissing Garcia's claims against the City of Houston). Specifically, Garcia is suing the Officer Defendants under 42 U.S.C. § 1983 for violating her First, Fourth, and Fourteenth Amendment rights. Dkt. 92.

On November 14, 2014, Garcia claims that she drove with her son to a relative's house to pick up her child's father, Salvador Rodriguez, on the way to her son's doctor's appointment.

Dkt. 92 at 3. On the way to that appointment, Officers Leal and Huerta pulled Garcia over. *Id.* Garcia alleges that she was "driving legally and committed no traffic violations." *Id.* Officer M.S. observed the traffic stop. *Id.*

Upon request, Garcia gave the officers her driver's license and insurance information. *Id.* at 4. During the stop, the officers questioned Rodriguez. *Id.* Garcia told Rodriguez that he did not have to answer the officers' questions. *Id.* Then, Officer Huerta allegedly threatened to arrest Garcia if she spoke to Rodriguez again. *Id.* After checking Rodriguez's identification, the police found outstanding warrants against him and arrested him. *Id.* Garcia claims she did not know of Rodriguez's warrants or criminal activity. *Id.* at 6.

Additionally, during the stop, Officers Leal and Huerta asked to search Garcia's vehicle. *Id.* at 4. Garcia refused consent. *Id.* Then, the officers ordered Garcia to exit her vehicle. *Id.* Garcia alleges that the two searched her car, including the trunk, for at least forty-five minutes while Officer Jones searched Garcia's body. *Id.* Officer Huerta allegedly placed Garcia in handcuffs and kept her in the patrol car. *Id.* During that detention, Garcia claims that Officer Huerta seized her cell phone and erased "a section of her phone recordings of the events." *Id.* at 5. Eventually, the officers released Garcia. *Id.*

On November 17, 2014, Garcia filed a complaint with the Houston Police Department Internal Affairs Division ("IAD") about the traffic stop, claiming that the officers racially profiled her and made an illegal traffic stop. *Id.* Garcia claims that after she filed the IAD complaint, "at least" Officer M.S. contacted the DAO about the complaint. *Id.* Garcia alleges that M.S.'s report caused the DAO to question her about the traffic stop. *Id.*

On November 20, 2014, the DAO placed Garcia on administrative leave with pay pending an investigation. *Id.* On December 19, 2014, the DAO terminated her employment. *Id.* at 5–6. A

DAO memo later revealed that Garcia was terminated for being dishonest about the traffic stop and Rodriguez's criminal history. *Id.* at 6. Garcia maintains that she was honest at all times and the DAO's reasons for termination were "pre-textual." *Id.* at 6–7.

On December 21, 2017, Garcia filed her fourth amended complaint against Harris County and the Officer Defendants. Dkt. 92. She asserts causes of action under § 1983 for violation of her rights to freedom of speech, to petition the government for redress of grievances, and to be free from unreasonable searches and seizures, under the First, Fourth, and Fourteenth Amendments. *Id.* at 17.

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

## III. ANALYSIS

The Officer Defendants move for summary judgment on Garcia's First Amendment claims against Officers Huerta and M.S., as well as her Fourth and Fourteenth Amendment claims against all four officers. The court will consider each claim in turn.

A.   **First Amendment Claims**

Garcia alleges that the Officer Defendants violated her First Amendment rights when: (1) she was threatened with arrest when she told Rodriguez he could remain silent while being questioned during the traffic stop; and (2) she was terminated for filing the IAD complaint. *See* Dkt. 92 at 4, 17. "The right to petition [the government for redress of grievances] is cut from the same cloth as the other guarantees of [the First] Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482, 105 S. Ct. 2787 (1985). Therefore, the court will address Garcia's First Amendment claims collectively. *See Gibson v. Kilpatrick*, 838 F.3d 476, 481 (5th Cir. 2016) ("Retaliation claims under both [the Speech Clause and the Petition Clause] are analyzed in the same way."). To assert a freedom of speech violation, Garcia must establish that "(1) she was 'engaged in constitutionally protected activity;' (2) [the defendant's] actions caused [her] 'to suffer an injury that would chill a person of ordinary fitness from continuing to engage in that activity;' and (3) [the defendant's] adverse actions 'were substantially motivated against [Garcia's] exercise of constitutionally protected conduct.'" *Singleton v. Darby*, 609 F. App'x 190, 193 (5th Cir. 2015) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)).

   **1. Officer Leal**

At the outset, the court notes that Garcia's live complaint makes significant factual changes from the previous complaint. Garcia's previous amended complaints alleged that both Officer Leal and Officer Huerta committed First Amendment violations during the November 2014 traffic stop. Dkt. 35 at 4; Dkt. 71 at 4. Garcia alleged that Officer Leal violated her right to freedom of speech when he threatened to arrest her after she informed Rodriguez of his right not to speak. Dkt. 71 at 16; Dkt. 79 at 11. Garcia further alleged that Officer Huerta violated her right to freedom of speech when he heard Officer Leal's threat and did nothing to intervene. Dkt. 35 at 4; Dkt. 67 at 10. The

4

court granted Garcia leave to amend her First Amendment claim against Officer Leal but dismissed the claim against Officer Huerta with prejudice. Dkt. 67 at 22 (order dismissing Garcia's First Amendment claim against Huerta); Dkt. 88 at 11 (order granting leave to amend as to Leal).

In her fourth amended complaint, Garcia specifically reasserts First Amendment claims against both Officer Leal and Officer Huerta despite only having leave to amend as to Leal. Dkt. 67 at 22; Dkt. 88 at 6–7; Dkt. 92 at 4 n.2. However, Garcia now alleges that Officer Huerta made the illegal threat and that Officer Leal merely heard the threat. *Id.* The Officer Defendants responded accordingly in their motion for summary judgment. Dkt. 112 at 11 (noting that Garcia now brings a claim against Huerta, not Leal, for allegedly threatening Garcia during the traffic stop).

Although Garcia now reasserts a First Amendment claim against Officer Leal for failing to intervene after hearing Officer Huerta's threat, the court dismissed the same claim against Huerta with prejudice. Dkt. 67 at 10 ("The court does not find that this alleged action, which the court infers as hearing another officer issue this threat, would serve to chill speech nor has Garcia made any argument that Officer Huerta's action was substantially motivated to stifle Garcia from exercising her First Amendment rights. Therefore, the court concludes that Garcia's claim against Officer Huerta for this instance of speech should be DISMISSED.") (citations omitted). Because the court granted leave to amend the First Amendment claim against Officer Leal, this new First Amendment claim against Leal is part of the live complaint. However, the court intends to dismiss this claim *sua sponte* for the reasons stated in the court's previous order (Dkt. 67 at 10) unless Garcia demonstrates that the court's previous reasoning should not apply. *See Hager v. DBG Partners, Inc.*, 903 F.3d 460, 464 (5th Cir. 2018) (holding that a district court may dismiss claims *sua sponte* as long as the plaintiff has "both notice of the court's intention and an opportunity to respond.") (quotations omitted). Garcia is therefore ORDERED to file a response within five days on the issue

of whether Garcia has stated a First Amendment claim against Officer Leal for hearing Officer Huerta's threat and failing to act.

### 2. Officer Huerta

In order for the court to properly consider Garcia's First Amendment claim against Officer Huerta, Garcia must file a Rule 60 motion for relief from the court's order dismissing the claim with prejudice. Dkt. 67 at 22; Fed. R. Civ. P. 60(b). Garcia has not done so. However, even if the court could consider Garcia's claim against Officer Huerta, that claim fails.

Garcia alleges that Officer Huerta violated her right to freedom of speech when he threatened to arrest her after she told Rodriguez of his right not to speak. Dkts. 92 at 4, 17. Officer Huerta argues that he is entitled to qualified immunity on this claim. Dkt. 112 at 12–13. When an official asserts qualified immunity, the plaintiff has the burden to show that qualified immunity does not apply. *Lincoln v. Turner*, 874 F.3d 833, 847 (5th Cir. 2017). Even if a plaintiff sufficiently alleges a constitutional violation against a government official, "[q]ualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808 (2009). "The dispositive question is whether the violative nature of particular conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullinex v. Luna*, 136 S.Ct. 305, 308 (2015) (quotations omitted). Officer Huerta argues that he is entitled to qualified immunity because Garcia failed to show that her First Amendment rights were clearly established in the context of this case. Dkt. 112 at 12–13.

The court agrees. Garcia's response to the current motion does not cite any case law to demonstrate that Officer Huerta violated a clearly established right. Dkt. 130 at 15–17; *see also* Dkt. 88 at 6–7 (holding that Garcia failed to show that her First Amendment right was clearly

established because "Garcia fail[ed] to provide *any* authority" on the issue). Garcia's complaint cites two cases, *Hartman v. Moore*, 547 U.S. 250, 126 S. Ct. 1695 (2006), and *Crawford-El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584 (1998). However, neither of these cases clearly establishes the violative nature of Huerta's conduct. In *Hartman*, the defendant officials "engineered" a failed criminal prosecution in retaliation for the plaintiff's criticism of the U.S. Postal Service. *Hartman*, 547 U.S. at 254. In *Crawford-El*, the defendant officials allegedly misdirected a plaintiff prisoner's belongings in retaliation for the plaintiff's outspoken criticism of the prison system. *Crawford-El*, 523 U.S. at 578. Neither of these cases clearly establish that Officer Huerta's alleged threat violated Garcia's First Amendment rights—the facts in each case are clearly distinguishable from the facts here. *See Lincoln*, 874 F.3d at 849 (holding that the plaintiff could not show a clearly established right by citing two similar, but distinguishable, cases). Therefore, to the extent the court may consider this claim, Officer Huerta's motion for summary judgment on the First Amendment claim against him is GRANTED.

### 3. Officer M.S.

Garcia claims that Officer M.S. retaliated against her for filing the IAD complaint by contacting the DAO in an effort to have Garcia's employment terminated. Dkt. 92 at 5, 17. Officer M.S. contends that he did not know about the IAD complaint until after he spoke with the DAO. Dkt. 112 at 14–15. Thus, Officer M.S. argues that Garcia's claim fails because Garcia cannot prove causation—the last element of a First Amendment claim. *Id.* at 14; *Singleton*, 609 F. App'x at 193.

Officer M.S. testified that he called the DAO with concerns about Garcia's access to sensitive files on November 14, the same day as Garcia's encounter with HPD. Dkt. 112-2 at 32. Garcia filed the IAD complaint on November 17. Dkt. 112-6 at 62. On November 20, M.S. met with representatives of the DAO and answered questions about Garcia's behavior during the traffic stop.

Dkt. 108-2 at 2. However, Officer M.S. testified that he did not know about the IAD complaint until December 17, when he was notified by an HPD internal investigator. Dkt. 112-2 at 35. Thus, Officer M.S. argues, neither M.S.'s first contact with the DAO on November 14 nor the answers M.S. gave on November 20 could have been motivated by a desire to retaliate for Garcia's IAD complaint. *Id.*

The burden therefore shifts to Garcia to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). However, Garcia does not identify any evidence that contradicts Officer M.S.'s position or calls M.S.'s testimony into question. Garcia's complaint alleges that Officer M.S. initially contacted the DAO after Garcia filed the IAD complaint, but Garcia does not support the allegation with any evidence. Dkt. 92 at 5. Moreover, Garcia's response to the current motion also fails to identify any evidence that Officer M.S. knew about the IAD complaint before December 17. Dkt. 130 at 17–18.

Instead, Garcia's response cites to evidence: (1) that her supervisor at the DAO knew about the IAD complaint; and (2) that Officer M.S. met with prosecutors at the DAO at some point before the DAO officially conducted its investigation of Garcia. *Id.* at 18. However, Garcia does not explain how this evidence creates a material fact issue. *See id.; see also Bank of Am. Nat'l Ass'n v. Stauffer*, 728 Fed. App'x 412, 413 (5th Cir. 2018) ("[Plaintiff's] only claim now is that the district court should have pieced together the relevant assertions in her affidavit and considered unraised arguments that would allow her [claims] to survive summary judgment. We will not impose that burden upon the district court or take it up ourselves."). Garcia's response "fails to properly address" Harris County's assertion of fact as required by Federal Rule of Civil Procedure 56( c), and the court therefore considers the fact of M.S.'s knowledge undisputed for the purposes of this motion. Fed. R. Civ. P. 56(e).

Garcia has therefore failed to carry her burden of setting forth specific facts showing a material fact issue as to the causation element of her claim. Accordingly, Garcia's First Amendment claim against Officer M.S. fails. Officer M.S.'s motion for summary judgment on this claim is GRANTED.

**B.     Fourth and Fourteenth Amendment Claims**

Garcia also brings Fourth and Fourteenth Amendment claims against the Officer Defendants arising out of their conduct during Garcia's traffic stop. Dkt. 92 at 17. Garcia claims that her Fourth Amendment right to be free from an unreasonable search and seizure was violated when Defendants: (1) searched her car; (2) searched her person; (3) detained her during Rodriguez's arrest; (4) seized her wallet; and (5) deleted her cell phone video. Dkt. 92 at 4, 16. The Fourth Amendment offers protection against an unreasonable search and seizure. *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001). During a traffic stop, limited searches and seizures are permitted when there is a "reasonable and articulable suspicion that a person has committed a crime." *United States v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868 (1968)).

The Officer Defendants argue that they acted reasonably given what they observed before and during the traffic stop and arrest of Rodriguez, and that they are therefore entitled to summary judgment on these claims. Dkt. 112 at 9–15. However, Garcia's account of the traffic stop creates genuine issues of material fact as to the legality of Defendants' actions. The parties disagree about whether Garcia's detention was for a reasonable length of time, whether the search of Garcia and her car was supported by the circumstances, and whether Garcia's detention was reasonable during Rodriguez's arrest. Dkt. 130 at 5–15. Moreover, Garcia testified that she was not violating any traffic laws when Officer Leal and Officer Huerta initiated the traffic stop. Dkt. 125-13 at 56–57.

9

Under *Terry*, the analysis begins with a determination of whether there was a reasonable suspicion for the stop and whether "the officer's action was justified at its inception." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc) (citing *Terry*, 392 U.S. at 19–20). Viewing the evidence in the light most favorable to Garcia, a genuine issue of material fact exists as to whether the officers had reasonable suspicion to perform the traffic stop. If the officers did not have reasonable suspicion to perform the traffic stop, any subsequent search or seizure would be a violation of Garcia's rights. *Brigham*, 382 F.3d at 506.

Next, the Officer Defendants argue that they are entitled to qualified immunity on at least part of Garcia's Fourth and Fourteenth Amendment claims. Dkt. 112 at 20. To overcome qualified immunity, Garcia must establish "that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)). It is clearly established that a traffic stop requires reasonable suspicion and that performing a stop and subsequent search without such suspicion is a violation of a constitutional right. *Terry*, 392 U.S. at 19–20. Because this right is clearly established, the Officer Defendants cannot claim qualified immunity as a matter of law. The Officer Defendants' motion for summary judgment on Garcia's Fourth Amendment claim is DENIED.

Additionally, the reasonableness requirements under the Fourth Amendment apply to the states through the Fourteenth Amendment. *Ker v. California*, 374 U.S. 23, 33, 86 S. Ct. 1623 (1963). Thus, any Fourth Amendment violation by a state actor necessarily violates the Fourteenth Amendment as well. *See Albright v. Oliver*, 510 U.S. 266, 307, 114 S. Ct. 807 (1994) (Stevens, J., dissenting). Because Garcia's Fourth Amendment claim survives summary judgment on the merits, her Fourteenth Amendment claim survives summary judgment on the merits as well. Further,

because the court has determined that Garcia defeats the qualified immunity bar to her Fourth Amendment claim, she also defeats that bar to her Fourteenth Amendment claim. The Officer Defendants' motion for summary judgment on Garcia's Fourteenth Amendment claim is DENIED.

### IV. CONCLUSION

The Officer Defendants' motion for summary judgment (Dkt. 112) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED with respect to Garcia's First Amendment claims against Officers Huerta and Leal. The motion is DENIED with respect to Garcia's Fourth and Fourteenth Amendment claims against all Officer Defendants. Garcia is ORDERED to file a response within five days of this order as provided herein.

Signed at Houston, Texas on November 14, 2018.

_____
Gray H. Miller
United States District Judge