UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DENISE GARCIA, §
§
    *Plaintiff*, §
§
v. § CIVIL ACTION H-16-2134
§
HARRIS COUNTY, *et al.*, §
§
    *Defendants*. §

**MEMORANDUM OPINION AND ORDER**

Pending before the court are (1) defendant Harris County's motion to exclude the testimony of plaintiff expert Roger Clark (Dkt. 109) and (2) defendants Richard Leal, Timothy Huerta, Brittany Jones, and M.S.'s ("Officer Defendants") motion to exclude Clark's testimony (Dkt. 115). Having considered the motions, responses, and applicable law, the court is of the opinion that Harris County's motion to exclude or limit the testimony of plaintiff expert Roger Clark (Dkt. 109) should be GRANTED and the Officer Defendants' motion to exclude (Dkt. 115) should be GRANTED IN PART and DENIED IN PART.

**I. BACKGROUND**

This is a civil rights and unlawful termination case. Garcia, a former Harris County District Attorney's Office ("DAO") employee, alleges that City of Houston police officers violated her civil rights during a traffic stop and that Harris County unlawfully terminated her for reporting those violations. Dkt. 92. Garcia is suing Harris County and Officers Leal, Huerta, Jones, and M.S. Dkt. 92; Dkt. 67 at 22 (dismissing Garcia's claims against the City of Houston). Specifically, Garcia is suing under 42 U.S.C. § 1983 for violations of her First, Fourth, and Fourteenth Amendment rights. Dkt. 92.

On November 14, 2014, Garcia claims that she drove with her son to a relative's house to pick up her child's father, Salvador Rodriguez, on the way to her son's doctor's appointment. Dkt. 92 at 3. On the way to that appointment, Officers Leal and Huerta pulled Garcia over. *Id.* Garcia alleges that she was "driving legally and committed no traffic violations." *Id.* Officer M.S. observed the traffic stop. *Id.*

Upon request, Garcia gave the officers her driver's license and insurance information. *Id.* at 4. During the stop, the officers questioned Rodriguez. *Id.* Garcia told Rodriguez that he did not have to answer the officers' questions. *Id.* Then, Officer Huerta allegedly threatened to arrest Garcia if she spoke to Rodriguez again. *Id.* After checking Rodriguez's identification, the police found outstanding warrants against him and arrested him. *Id.* Garcia claims she did not know of Rodriguez's warrants or criminal activity. *Id.* at 6.

Additionally, during the stop, Officers Leal and Huerta asked to search Garcia's vehicle. *Id.* at 4. Garcia refused consent. *Id.* Then, the officers ordered Garcia to exit her vehicle. *Id.* Garcia alleges that the two searched her car, including the trunk, for at least forty-five minutes while Officer Jones searched Garcia's body. *Id.* Officer Huerta allegedly placed Garcia in handcuffs and kept her in the patrol car. *Id.* During that detention, Garcia claims that Officer Huerta seized her cell phone and erased "a section of her phone recordings of the events." *Id.* at 5. Eventually, the officers released Garcia. *Id.*

On November 17, 2014, Garcia filed a complaint with the Houston Police Department Internal Affairs Division ("IAD") about the traffic stop, claiming that the officers racially profiled her and made an illegal traffic stop. *Id.* Garcia claims that after she filed the IAD complaint, "at least" Officer M.S. contacted the DAO. *Id.* Garcia alleges that M.S.'s report caused the DAO to question her about the traffic stop. *Id.*

On November 20, 2014, the DAO placed Garcia on administrative leave with pay pending an investigation. *Id.* On December 19, 2014, District Attorney Devon Anderson terminated her employment with Harris County. *Id.* at 5–6. A DAO memo later revealed that Garcia was terminated for being dishonest about the traffic stop and Rodriguez's criminal history. *Id.* at 6. Garcia maintains that she was honest at all times and that Harris County's reasons for termination were "pre-textual." *Id.* at 6–7. Garcia alleges that Harris County fired her because she filed the IAD complaint against the Officer Defendants. *Id.* at 10–14.

On December 21, 2017, Garcia filed her fourth amended complaint against Harris County and the Officer Defendants (collectively, "Defendants"). Dkt. 92. The only remaining claims in the case are: (1) a First Amendment retaliation claim against Harris County arising out of Garcia's firing (Dkt. 143); and (2) Fourth and Fourteenth Amendment claims against the Officer Defendants arising out of the traffic stop and subsequent searches and seizures (Dkt. 144).

Defendants have moved to exclude Garcia's expert Roger Clark. Dkts. 109, 115. Garcia has retained Clark to testify as an expert "on matters of police duties and investigations." Dkt. 124 at 2. Clark worked as a police officer for twenty-seven years in a number of different roles and has frequently given expert testimony since his retirement. Dkt. 124-1 at 1–2. Harris County objects to one of Clark's opinions. Dkt. 109. The Officer Defendants have moved to exclude Clark's testimony in its entirety. Dkts. 115, 132.

## II. LEGAL STANDARD

The party offering expert testimony has the burden to prove by a preponderance of the evidence that the proffered testimony satisfies the admissibility requirements of Federal Rule of Evidence 702. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In evaluating an expert's testimony under Rule 702, the court takes on a "gatekeeping role" and makes a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93, 597, 113 S. Ct. 2786 (1993). To admit an expert's testimony, the court must determine that it is both relevant and reliable. *Id.* at 589.

To establish reliability, the party offering the expert testimony need not show that the expert's assessment is correct. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). However, the court need not admit testimony based purely on the *ipse dixit* of the expert. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512 (1997). In making the reliability determination, the Supreme Court has indicated that the trial court should consider whether the expert's theory or technique (1) can or has been tested, (2) is subject to peer review and publication, (3) has a high known or potential error rate or standards controlling its operation, and (4) is generally accepted in the relevant scientific community. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149, 119 S. Ct. 1167 (1999) (citing *Daubert*, 509 U.S. at 592–94). Importantly, these factors are not a definitive checklist and may not be relevant to assessing the expert's reliability in every case. *Id.* at 150.

Although the court's gatekeeping obligation applies to both scientific and non-scientific expert testimony, the factors listed in *Daubert* are more difficult to apply to non-scientific experts.

*See First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 334 (6th Cir. 2001) (noting that some of the pronouncements in *Daubert* had limited application in the context of non-scientific testimony). Therefore, the court's gatekeeping inquiry will vary depending on the nature of the case before the court, the expert's particular expertise, and the subject of his testimony. *Kumho Tire Co.*, 526 U.S. at 150. Nonetheless, the court will apply the same level of scrutiny to scientific and non-scientific expert testimony. *See* Fed. R. Evid. 702, Advisory Comm. Note (2000) ("While the relevant factors for determining reliability will vary from expertise to expertise, the amendment rejects the premise that an expert's testimony should be treated more permissively simply because it is outside the realm of science.").

## II. ANALYSIS

### A. General Objections

The Officer Defendants make several broad objections regarding the factual basis of Clark's opinions.[1] The Officer Defendants argue that Clark's opinions are based on two unreliable sources of information: (1) a previous version of Garcia's amended complaint, and (2) Garcia's account of the traffic stop. Dkt. 115 at 3–4. The Officer Defendants also argue that Clark's testimony is not sufficiently reliable because it draws factual conclusions that are "contrary to the evidence" in the case. *Id.* at 3.

---

[1] At the outset, the court notes that the Officer Defendants make a new argument in their reply that they did not make in their original motion. *See* Dkt. 132 (arguing that Clark's testimony includes impermissible legal conclusions). However, "[i]t is well established that 'a district court may rely on arguments and evidence presented for the first time in a reply brief as long as the court gives the nonmovant adequate opportunity to respond.'" *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 491 F. Supp. 2d 690, 704–05 (S.D. Tex. June 12, 2007) (Harmon, J.) (quoting *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 n.10 (5th Cir. 2004). Garcia has had ample opportunity to request leave to file a sur-reply, which the court would have granted, but she has not done so. Garcia has had an adequate opportunity to respond, so the court will consider the Officer Defendants' argument.

5

Expert testimony must be based on "sufficient facts" under Federal Rule of Evidence 702(b). However, as a general rule, "the factual basis of an expert's opinion goes to the credibility of the testimony not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Perez v. City of Austin*, No. A-07-CA-044, 2008 WL 1990670, at *5 (W.D. Tex. May 5, 2008) (internal quotation marks omitted) (citing *Hose v. Chicago N.W. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1996)); *see also Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) ("The fact-finder is entitled to hear [the expert's] testimony and decide whether it should accept or reject that testimony after considering all factors that weigh on credibility, including whether the predicate facts on which [the expert] relied are accurate."); Fed. R. Evid. 702, Advisory Comm. Note (2000) (noting that "experts sometimes reach different conclusions based on competing versions of the facts" and that the trial court may not exclude an expert merely because the court believes a particular version of the facts). The court has already determined that material fact issues exist as to the Officer Defendants' stop, search, and seizure of Garcia. Dkt. 112. Thus, the court cannot conclude that the factual basis of Clark's testimony is insufficient simply because Clark reached different factual conclusions from the Defendants, relied more heavily on Garcia's version of the facts, or referenced a potentially outdated complaint. Defendants can cross examine Clark at trial regarding whether the factual basis for his opinions is complete and accurate, but the court will not exclude his testimony on this basis.

**B.      Specific Objections**

In addition to the Officer Defendants' general objections, Defendants have specifically objected to each of the eight opinions Clark offered in his expert report. Defendants argue that Clark's opinions either constitute legal conclusions or are unnecessary and irrelevant. *See* Dkt. 109 at 4; Dkt. 115 at 4–5. The court will address each of Clark's opinions in turn.

Clark's first opinion addresses the legality of Officer M.S.'s actions. Dkt. 109-1 at 10–11. Clark states that Officer M.S. employed "incompetent surveillance and investigation procedures" that resulted in "the unnecessary and excessive use of force and detention/arrest" of Garcia; that M.S. was "not allowed to inflict police authority on civilians without a reasonable suspicion or probable cause"; that M.S. had "no legal authority" to order Garcia to pull over; that M.S. did not have "the requisite reasonable suspicion or probable cause to order a pull-over, interrogation, handcuffing, and search" of Garcia's vehicle; and that "officers are trained that they cannot inflict lawful force or violation of constitutional rights on a whim." *Id.*

This opinion includes myriad impermissible legal conclusions and is therefore inadmissible. It is the province of the judge, not an expert, to instruct the jury on the legal standards applicable to the case. *See Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards."). Clark's opinion attempts to summarize the applicable law, which Clark may not do. Moreover, the central theme of Clark's opinion embraces ultimate legal conclusions about the reasonableness—and therefore legality—of M.S.'s actions. "An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). However, "Rule 704 does not allow an expert to render conclusions of law. This rule and the other Federal Rules of Evidence afford ample assurances against the admission of opinions which would merely tell the jury what result to reach." *United States v. Thomas*, 847 F.3d 193, 206 (5th Cir. 2017) (citations and quotations omitted). Clark's opinion instructs the jury that M.S.'s actions were illegal. However, the jury itself must decide whether M.S.'s actions were illegal. Therefore, the Officer Defendants' motion to exclude Clark's testimony as to Opinion 1 is GRANTED.

Clark's second opinion similarly focuses on impermissible legal conclusions. The central conclusion of Clark's second opinion is that "Officers Leal's and Huerta's lengthily [sic] detention/arrest, handcuffing and vehicle search significantly exceeded the lawful authority as taught to all officers." Dkt. 109-1 at 11. Clark goes on to explain why he believes Leal and Huerta's actions were unlawful, concluding that the officers had "no lawful authority or lawful logic" to continue to restrain Garcia. *Id.* Again, Clark may not testify as to the legality of Defendants' behavior. The Officer Defendants' motion to exclude Clark's testimony as to Opinion 2 is GRANTED.

Clark's third opinion states that officers are "required to be ethical and professional in their contacts with citizens." *Id.* at 12. Clark ultimately concludes that Officers Leal and Huerta did not meet this requirement, and that therefore the officers "violated policy, law, and Ms. Garcia's constitutional rights." Clark may not testify that the officers violated the law or Garcia's constitutional rights. However, Clark's report indicates that Clark reviewed, *inter alia*, Harris County records and Texas Commission on Law Enforcement Education (TCOLE) standards.[2] *Id.* at 3–5. Clark may testify that the officers violated these or other policies, as long as he does not offer legal conclusions. Therefore, the Officer Defendants' motion to exclude Clark's testimony as to Opinion 3 is GRANTED IN PART and DENIED IN PART.

---

[2]This court has previously determined that the standards outlined in the TCOLE curriculum constitute a sufficiently reliable methodology to serve as a basis for expert opinion. *Carr v. Montgomery Cty.*, No. H-13-2795, 2015 WL 5838862, at *7 (S.D. Tex. Oct. 7, 2015) (Miller, J.)*; see also Tolan v. Cotton*, No. 4:09-CV-1324, 2015 WL 5310801, at *3 (S.D. Tex. Sept. 11, 2015) (Harmon, J.) (noting that TCOLE "ha[s] been found to comply with constitutional requirements" and "has been deemed adequate by the State of Texas to prepare officers to competently perform the duties of their office").

In his fourth opinion, Clark states that the Houston Police Department ("HPD") "encourage[s] their Officers to ignore [TCOLE] standards and use police powers in excess of their intended purpose." *Id.* at 12. This opinion is merely Clark's own personal view and is not "the product of reliable principles and methods." *See* Fed. R. Evid. 702(d). Additionally, the last sentence of Clark's opinion concludes that HPD's procedures encouraged the Officer Defendants "to violate Ms. Garcia's constitutional rights." *Id.* at 12. This portion of the opinion is an impermissible legal conclusion. The Officer Defendants' motion to exclude Clark's Opinion 4 is therefore GRANTED.

Clark's fifth opinion concludes that Garcia's bodily search and detention "violated policy, [TCOLE] training, and law." *Id.* Again, Clark may not opine on the ultimate legality of the officers' actions. However, Clark may testify as to how the Officer Defendants' actions relate to law enforcement policies, including TCOLE standards. The Officer Defendants' motion to exclude Opinion 5 is GRANTED IN PART and DENIED IN PART.

Clark's sixth opinion states that HPD "fosters an environment" in which officers "use their police powers to violate the civil rights of the citizens they have sworn to protect, which is in violation [of] policy, law, and [TCOLE] standards." *Id.* at 12. Again, Clark's personal opinion regarding HPD's work environment is inadmissible because it is not "the product of reliable principles and methods." Fed. R. Evid. 702(d). The Officer Defendants' motion to exclude Opinion 6 is GRANTED.

Opinion 7 concludes that "HPD has stamped its approval of Officer Leal and Huerta's actions," and that therefore "more citizens will be subjected to similar unconstitutional searches and unconstitutional detainment." *Id.* This opinion is an impermissible legal conclusion and is also irrelevant. The City of Houston, of which HPD is a part, is no longer party to this lawsuit.

9

*See* Dkt. 67 at 22 (dismissing all claims against the City of Houston with prejudice). Post-incident approval by HPD does not make it more or less likely that the individual officers actually acted illegally. *See* Fed. R. Evid. 401(a) (providing that evidence is relevant if "it has any tendency to make a [material] fact more or less probable than it would be without the evidence."). Therefore, whether HPD approved of or ratified Leal and Huerta's actions after the fact is irrelevant to the claims in this case. Potential future constitutional violations by HPD are also irrelevant because the court cannot grant relief as against non-parties and Garcia's complaint only requests injunctive relief against Harris County. Dkt. 92 at 15–16. Additionally, the opinion also contains impermissible legal conclusions that Officers Leal and Huerta engaged in unconstitutional behavior. Thus, the Officer Defendants' motion to exclude Clark's Opinion 7 is GRANTED.

Finally, Clark's eighth opinion states that "[t]here was no lawful authority or logical reason for M.S. to inform Ms. Garcia's employer (Harris county [sic] D.A. Office) regarding this incident. It appears in this set of facts as a deliberate successful attempt to have her fired." Dkt. 109-1 at 13. Both Harris County and the Officer Defendants have moved to exclude this opinion, arguing that it is irrelevant to the remaining claims in the case and contains impermissible legal conclusions. Dkts. 109, 115, 132. Harris County also argues that this opinion draws conclusions regarding employment law, not police procedures, and that Clark is not qualified to testify on employment law matters. Dkt. 109.

The court agrees. The first sentence contains an impermissible legal conclusion that M.S. had "no lawful authority" to report Garcia to the DAO. Further, the first sentence contains irrelevant opinions on Officer M.S.'s motivations. While Garcia initially also brought a First Amendment retaliation claim against M.S., that claim has been dismissed. Dkt. 144 at 7–9. Whether Officer M.S. had a "logical reason" to contact the DAO may have been relevant to a First Amendment claim

10

against M.S. However, Officer M.S.'s motivations are not relevant to the remaining First Amendment claim against Harris County because M.S. was not a part of the decision-making process when Garcia was fired. *See* Dkt. 92 at 6 (acknowledging that District Attorney Devon Anderson, herself or through her First Assistant, fired Garcia). The first sentence of Opinion 8 is inadmissible.

The second sentence of Opinion 8 is also inadmissible. Clark's experience is solely in law enforcement and education. *See* Dkt.124-1 (Clark's resume). Thus, Clark is not qualified to opine on employment matters, such as whether Officer M.S.'s efforts to have Garcia fired were "deliberate" and "successful." Further, as discussed above, Officer M.S.'s motivations for contacting the DAO are irrelevant to the issue of whether the DAO fired Garcia for filing the IAD complaint. Therefore, Defendants' motion to exclude Opinion 8 is GRANTED.

### III. CONCLUSION

Harris County's motion to exclude Opinion 8 of expert Roger Clark's testimony (Dkt. 109) is GRANTED. The Officer Defendants' motion to exclude Clark's testimony (Dkt. 115) is GRANTED IN PART and DENIED IN PART. It is DENIED with respect to Clark's testimony regarding law enforcement policies and TCOLE standards in Opinions 3 and 5. It is GRANTED in all other respects.

Signed at Houston, Texas on November 20, 2018.

_____
Gray H. Miller
United States District Judge